UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Sai Zhao Jiang,

Petitioner,

vs.                                                  REPORT AND RECOMMENDATION

Michael Chertoff, Secretary of
the United States Department
of Homeland Security; Mark
Cangemi, Director of Detention
and Removal, Minnesota District,
United States Immigration and
Customs Enforcement; and Pat
Carr, Jail Commander of
Sherburne County Jail,

Respondents.          Civ. No. 06-4486 (DSD/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

I. <u>Introduction</u>

This matter came before the undersigned United States Magistrate Judge

pursuant to a general assignment, made in accordance with the provisions of Title 28

U.S.C. §636(b)(1)(B), upon the Petition of Sai Zhao Jiang ("Jiang") for a Writ of

Habeas Corpus under Title 28 U.S.C. §2241.   Jiang appears pro se, and the

Respondents appear by Mary L. Trippler, Assistant United States Attorney.

For reasons which follow, we recommend that the Petition for a Writ of Habeas Corpus be denied.

## II. Facts and Procedural Background[1]

Jiang, a native and citizen of China, is currently being detained by Federal immigration authorities at the Sherburne County Jail, in Elk River, Minnesota. Jiang has been detained since June 1, 2005, when the United States Immigration and Naturalization Service (the "INS")[2] commenced removal proceedings against her. Jiang originally entered the United States on January 1, 1997, as a nonimmigrant visitor with permission to remain for six months. See, Administrative Record ("A.R."), Docket No. 7, at 2; see generally, Immigration and Nationality Act ("INA"), §101(a)(15)(B), Title 8 U.S.C. §1101(a)(15)(B). Jiang remained in the United States

---

[1]Our factual and procedural history is largely drawn from the Administrative Record submitted by the Respondents in support of their Responsive Memorandum. See, Administrative Record ("A.R."), Docket No. 7; Response to Petition, Docket No. 8. We have also reviewed and considered the exhibits and documents submitted by Jiang, in support of her Petition, and will cite to them accordingly.

[2]On March 1, 2003, the former Immigration and Naturalization Service ("INS") ceased to exist as an agency and was reorganized into the U.S. Immigration Customs and Enforcement, and the U.S. Citizenship and Immigration Services under the Department of Homeland Security. See, Title 6 U.S.C. §252, stat. notes (2003). Since the paperwork relating to Jiang's removal proceedings makes reference to all of these agencies, for purposes of this Petition, we will refer to these agencies collectively as the INS, as a matter of convenience.

long after her visa had expired and, on October 20, 2003, her husband, Rafael Vilka,[3] who is a naturalized United States citizen, filed a Petition for Alien Relative on Jiang's behalf, seeking an adjustment of her immigration status based on their marriage. Id. at 4, 6. During an investigation by Federal immigration authorities into Vilka's Petition, Jiang testified in a sworn, signed statement, that her marriage was a sham, that was entered solely for an immigration benefit. Id. at 4; see also, Petitioner's Exhibits, Docket No. 11, Exhibit B, at Exhibit 7. Accordingly, Vilka's Petition was denied on June 8, 2004. Id. at 4. In the interim, on June 3, 2004, the INS issued a Notice to Appear to Jiang for removal proceedings, based on her violation of the conditions of her visa. Id. at 2; see also, INA §237(a)(1)(B), Title 8 U.S.C. §1227(a)(1)(B).

On May 2, 2005, prior to her Hearing before an Immigration Judge ("IJ") in her removal proceedings, Jiang pled guilty, in New York State Court, based on her involvement in an identity theft crime and, on May 27, 2005, a Judgment of conviction was entered.[4] See, Petitioner's Exhibits, supra, Exhibit B, at Exhibit 5, and at Exhibit

---

[3]The name of Jiang's husband is spelled in several ways throughout the documents submitted by the parties, including Rafael Vilka, A.R., supra at 4, 6; Ralph Vica, id. at 9; and Raphael Vilca, id. at 23. For convenience only, we will refer to him as "Vilka."

[4]The Record is not entirely clear as to the statutory basis for Jiang's conviction. Jiang's Application for Asylum, which is dated July 5, 2005, identifies this conviction

20, at unnumbered page 2.   Jiang was sentenced to a term of one (1) year in the

as a Class E Felony.  See, <u>A.R.</u>, supra at 15, citing <u>New York Penal Law §190.82</u> (unlawful possession of personal identification information in the second degree).  The IJ found that Jiang's conviction constituted an aggravated felony, rendering Jiang ineligible for asylum.  See, <u>A.R.</u>, supra at 21 (Decision of IJ, citing <u>New York Penal Law §§110.00</u> (attempt), and <u>190.82</u> (unlawful possession of personal identification information in the second degree).  The Board of Immigration Appeals stated that Jiang pled guilty to a violation of New York Penal Law §190.81, which defines unlawful possession of personal identification information in the third degree as a Class A misdemeanor.  <u>Id.</u> at 41.   Jiang now asserts that her conviction was for the **attempted** unlawful possession of a forged instrument, also a Class A misdemeanor.   See, <u>Petitioner's Reply</u>, <u>Docket No. 10</u>, at 7; <u>Petitioner's Exhibits</u>, <u>Docket No. 11</u>, Exhibit B, at 3, and Exhibit B, at Exhibit 20.   While documents relating to Jiang's custody review by the INS identify her conviction as one for attempted possession of identity data.  See, <u>A.R.</u>, supra at 47.

Moreover, Jiang currently contends that her conviction is not yet final, and thus, should not have been considered as evidence in her removal proceedings.  See, <u>id.</u> at 7; <u>Petitioner's Exhibits</u>, supra, Exhibit B, at 3, and Exhibit B, at Exhibit 17.   Jiang contends that her conviction is currently on appeal in the New York State Court system.  <u>Id.</u>  The  Record shows that Jiang filed a Notice of Appeal on June 6, 2005, following her guilty plea, with the Appellate Division for the Second Judicial Department of the New York State Courts.  See, <u>Petitioner's Exhibits</u>, supra, Exhibit B, at Exhibit 5.  In a letter dated December 28, 2005, however, the Clerk's Office for that Court notified Jiang that no action had been taken to prosecute her appeal, and that her appeal would be eventually dismissed if her appeal did not go forward.  <u>Id.</u> There is nothing in the Record to show the progress of Jiang's appeal since December 28, 2005.  However, as discussed more fully in the text of this Report, the validity of Jiang's final Removal Order is not a matter before this Court because only a Federal Court of Appeals would have jurisdiction to consider Jiang's challenge to the finality of her criminal conviction, and therefore, to the validity of her Removal Order on that basis.  See, <u>INA §242(a)(5), Title 8 U.S.C. §1252(a)(5)</u>.   Therefore, the discrepancies relating to Jiang's criminal conviction -- with regard to either its finality or its precise statutory basis -- are irrelevant to her current Habeas Petition.

Suffolk County Correctional Facility, in New York.  See, <u>A.R.</u>, supra at 47.

On June 1, 2005, when Jiang was released from her criminal sentence, she was served with the Notice to Appear relating to her removal proceedings, and was taken into INS custody.  See, <u>A.R.</u>, supra at 19, 47.  On August 16, 2005, Jiang appeared before the IJ for her Removal Hearing.  <u>Id.</u> at 19.  At the Hearing, Jiang admitted that she had stayed longer than permitted and conceded that she was removable.[5]  <u>Id.</u> at 20.  To avoid removal, Jiang applied for asylum under INA §208, Title 8 U.S.C. §1158, which allows the Attorney General to grant asylum to applicants who prove a refugee status based, in part, on a well-founded fear of persecution on account of their race, religion, nationality, membership in a particular social group, or political opinion. See, <u>A.R.</u>, supra at 8-17; see also, <u>INA §208(b)(1)(B)(i), Title 8 U.S.C. §1158(b)(1)(B)(i)</u>.

---

[5]Although the first page of the IJ's decision states that the immigration charge against Jiang arose under INA §237(a)(2)(B), see, <u>A.R.</u>, supra at 19, both the Notice to Appear, and the Bureau of Immigration Appeals' final Removal Order, identify the statutory basis for the charge as INA §237(a)(1)(B), Title 8 U.S.C. §1227(a)(1)(B). See, <u>A.R.</u>, supra at 2, 41.  We presume that the IJ made a typographical error, as Section 237(a)(2)(B) relates to aliens who are removable for controlled substance offenses, while the Record clearly shows that Jiang was found removable under Section 237(a)(1)(B), for violating the conditions of her visa.

An applicant's testimony may be sufficient to prove refugee status if the trier of fact makes a favorable determination of the applicant's credibility.   See, INA §208(b)(1)(B)(ii), (iii), Title 8 U.S.C. §1158(b)(1)(B)(ii), (iii).   In addition to her application for asylum, Jiang concurrently applied for withholding of removal, see, INA §241(b)(3), Title 8 U.S.C. §1231(b)(3), alleging, pursuant to the United Nations Convention against Torture, that she would more likely than not be tortured if removed to China.  See, A.R., supra at 8-17; see also, 8 C.F.R. §§208.16(c), 208.18.  As with an application for asylum, the applicant bears the burden of proof in an application for withholding of removal, though his or her testimony may be sufficient proof if deemed credible.  See, 8 C.F.R. §208.18(c)(2).

In support of those applications, Jiang alleged that she had a well-founded fear of future persecution based on her conversion to Catholicism.  See, A.R., supra at 12. Jiang also alleged that several of her family members had suffered as a result of China's population control policy, under which, Jiang averred, her sister-in-law was allegedly forced to undergo an abortion when she was eight (8) months pregnant, and her sister was allegedly forced to undergo sterilization after her second child was born. Id.  Jiang also claimed that her mother had given birth to Jiang's younger sister in secret, and had given her away to avoid punishment pursuant to the population control

policy.  <u>Id.</u>  Jiang stated that she feared she would be subjected to forced sterilization, since she planned to have more than one (1) child.  <u>Id.</u> at 13.  Finally, Jiang alleged fear of incarceration and torture, asserting that the Chinese Federal Police mistakenly believed that she was a criminal and a terrorist, and that her brother had been previously tortured and detained by the police.  <u>Id.</u> at 12.

The IJ found that Jiang was not eligible for asylum for two (2) independent reasons:  1) she had failed to apply for asylum within one (1) year of her arrival in the United States, and did not give a valid explanation for her delay, see, <u>INA §208(a)(2)(B), (D), Title 8 U.S.C. §1158(a)(2)(B), (D)</u>; <u>8 C.F.R. §1208.4(a)(2), (4) and (5)</u>; and 2) she had been convicted of an aggravated felony,[6] <u>INA §208(a)(2)(A)(ii), (B)(i), Title 8 U.S.C. §1158(a)(2)(A)(ii), (B)(i)</u>.  See, <u>A.R.</u>, supra at 21.  Therefore, the IJ denied Jiang's application for asylum.

With regard to Jiang's application for withholding of removal under the Convention against Torture, the IJ determined that Jiang's fear of persecution, which was based on China's population control policy, was at best speculative, since Jiang did not currently have any children, and had not experienced conflict with China's

_____

[6]See, <u>Footnote 4</u>, supra.

population control policy.  Id. at 22, 26.  The IJ also doubted the sincerity of Jiang's conversion to Catholicism, despite the corroborating testimony of the Catholic chaplain at the State Correctional Facility where Jiang served her criminal sentence. Id. at 26, 29.  The IJ found that Jiang failed to prove a likelihood of persecution based on her religion.  Id. at 30.

Finally, with regard to Jiang's sworn statement to INS officers, in which she stated that her marriage was a sham, Jiang claimed that she had difficulty understanding English, and that, therefore, she had not understood the officers' questions during the interview, which resulted in her sworn statement.[7]  Id. at 27.  The IJ disbelieved Jiang's claims, in part based upon his observations of Jiang, and her command of English during the removal proceedings.  Id.  The IJ concluded that Jiang's testimony was not credible, and that she had failed to prove grounds for withholding of removal.[8]  Id. at

---

[7]Jiang also contends that the interview was illegitimate, since she did not have the benefit of counsel.  See, Petitioner's Reply, supra at 8; see also, Petitioner's Exhibits, supra, Exhibit B, at Exhibit 7 and Exhibit 17.  Because we do not have jurisdiction to review the findings of the IJ, see, INA §242(a)(5), Title 8 U.S.C. §1252(a)(5), we express no view on those contentions.

[8]On the day of the Hearing, Jiang supplied the IJ with additional documentation in support of her claims, which was written in the Chinese language.  See, A.R., supra at 32.  The IJ declined to consider those submissions, noting that Jiang had failed to comply with the Court's Rules, that documents be submitted ten (10) days in advance of the Hearing, and that they be translated into English.  Id.

32.  Accordingly, on August 16, 2005, the IJ denied all of Jiang's applications for relief, and ordered her removal to China.  See, id. at 18, 33.

Jiang appealed the IJ's decision to the Board of Immigration Appeals ("BIA"), alleging, in part, that the IJ's decision was not in conformity with the law, that the IJ had made clearly erroneous factual determinations, and that her Due Process rights had been violated by inadequate translation services, and by the IJ's refusal to consider her supplemental documents.  See, A.R., supra at 34, 35, 36-38.  On February 6, 2006, the BIA affirmed the IJ's decision in its entirety, rejected Jiang's Due Process claims, and denied her Motion to remand based on the additional evidence.  Id. at 41-43. Thus, the BIA dismissed Jiang's appeal, and issued a final Removal Order.  Id.  On May 22, 2006, the BIA denied Jiang's Motion to Reconsider, as untimely.  Id. at 45.

In the interim, on March 2, 2006, Jiang filed a Petition for Review of the BIA's decision with the United States Court of Appeals for the Second Circuit, as well as a Motion for a Stay of Removal pending her appeal.  Id. at 59; see also, Jiang v. Gonzales, Second Circuit Docket No. 06-1001-ag, available online at http://pacer. psc.uscourts.gov;[9] see also, INA §242(a)(5), Title 8 U.S.C. §1252(a)(5)(granting

---

[9]"[F]ederal courts may sua sponte take judicial notice of proceedings in other courts if they relate directly to matters at issue."  Conforti v. United States, 74 F.3d

Federal Courts of Appeals the sole jurisdiction to review Order of Removal).   After the BIA denied Jiang's Motion to Reconsider, she filed a second Petition for Review with the Second Circuit, on June 23, 2006.   Id. at 60; see also, Jiang v. Gonzales, supra.  On October 13, 2006, the Second Circuit denied Jiang's Motion for a Stay and dismissed her Petition for Review as to her first Petition of March 2, 2006.  Id. at 61; see also, Jiang v. Gonzales, supra.

However, on that same date, the Second Circuit granted Jiang's Motion for a Stay of Removal while it considered her second Petition for Review of June 23, 2006. Id.  On January 24, 2007, the Second Circuit dismissed Jiang's second Petition for Review on the merits, finding no basis in law or fact for Jiang's claims.   See, Jiang v. Gonzales, supra.  On April 30, 2007, the Second Circuit denied Jiang's Motion to Reconsider.  Id..  The Second Circuit issued a Mandate for its decision on June 14, 2007.  Id.; see also, Rule 41, Federal Rules of Appellate Procedure.  However, on June 20, 2007, Jiang filed a Petition for a Writ of Certiorari with the United States Supreme Court.  See, Jiang v. Keisler, Supreme Court Docket No. 07-5578, available online at http://www.supremecourtus.gov.  Accordingly, on July 13, 2007, and upon

---

838, 840 (8th Cir. 1996), quoting Hart v. C.I.R., 730 F.2d 1206, 1207 n. 4 (8th Cir. 1984).

Jiang's Motion, the Second Circuit recalled its Mandate, pending the consideration of Jiang's Petition to the Supreme Court.  See, <u>Jiang v. Gonzales</u>, supra.  On October 1, 2007, the Supreme Court denied Jiang's Petition, and on November 26, 2007, it denied her Petition for Rehearing.  See, <u>Jiang v. Keisler</u>, supra.  Accordingly, the Second Circuit's Mandate is imminent.  See, <u>Rule 41, Federal Rules of Appellate Procedure</u>.

In her Federal Habeas Petition, which she filed on November 13, 2006, Jiang asserts that her continued detention violates INA §241, Title 8 U.S.C. §1231, and <u>Zadvydas v. Davis</u>, 533 U.S. 678 (2001).  See, <u>Petition for Writ of Habeas Corpus</u>, <u>Docket No. 1</u>, at 6-8; <u>Petitioner's Reply</u>, <u>Docket No. 10</u>, at 2, 3-4.  In her Reply Memorandum, Jiang further asserts that the INS violated her Due Process rights when it made a decision, on May 2, 2006, to continue her detention pending removal.  See, <u>Petitioner's Reply</u>, supra at 5, 7, 8.  We address each of her claims in turn.

III.  <u>Discussion</u>

A.    <u>Standard of Review</u>.  "[W]hen an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')."  <u>INA §241(a)(1)(A), Title 8 U.S.C. §1231(a)(1)(A)</u>.

The removal period begins on the latest of the following:

> (i)    The date the order of removal becomes administratively final.

> (ii)   If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

> (iii)  If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

<u>INA §241(a)(1)(B), Title 8 U.S.C. §1231(a)(1)(B)</u>.

Detention is mandatory during the 90-day removal period.  See, <u>INA §241(a)(2), Title 8 U.S.C. §1231(a)(2)</u>.

An alien's detention may continue beyond the removal period, at the discretion of the Attorney General, when removal has not been effected within 90 days.  See, <u>INA §241(a)(6), Title 8 U.S.C. §1231(a)(6)</u>; <u>Zadvydas v. Davis</u>, supra at 682; see also,

- 12 -

8 C.F.R. 241.4(c)(1)(delegating authority to INS District Directors to make initial custody determinations as well as subsequent determinations during 90-day removal period and 90-day post-removal-period).   Although the Attorney General,  and -- by delegation -- the INS, has discretion to detain an alien beyond the removal period, that continued detention is subject to the limits of the Fifth Amendment's Due Process clause.  See, Zadvydas v. Davis, supra at 690-692.

In Zadvydas v. Davis, the Supreme Court rejected as unconstitutional the Government's argument that the Attorney General has discretion to detain indefinitely an alien subject to a final Removal Order.  Id. at 689, 692 ("The serious constitutional problem arising out of a statute that, in these circumstances, permits an indefinite, perhaps permanent, deprivation of human liberty without any [procedural] protection is obvious").   The Supreme Court instead read a temporal limitation into INA §241(a)(6), Title 8 U.S.C. §1231(a)(6), holding that, although detention beyond the 90-day removal period was permitted by statute, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute."  Zadvydas v. Davis, supra at 699 (citation omitted).

The Zadvydas Court contemplated that the determination of whether removal was "reasonably foreseeable" would be made in consideration of an alien's Petition

- 13 -

for Habeas relief under Title 28 U.S.C. §2241.  See, Zadvydas v. Davis, supra at 699

(citing Title 28 U.S.C. §2241(c)(3) for the Courts' authority to determine whether

detention is "in violation of the Constitution or laws or treaties of the United States").

A Habeas Petition under Section 2241, however, may not be used to seek review of

an Order of Removal in a Federal District Court:

> Notwithstanding any other provision of law (statutory or
> nonstatutory), including section 2241 of Title 28, or any
> other habeas corpus provision, * * * a petition for review
> filed with an appropriate **court of appeals** in accordance
> with this section shall be the **sole and exclusive means** for
> judicial review of an order of removal entered or issued
> under any provision of this chapter[.]

INA §242(a)(5), Title 8 U.S.C. §1252(a)(5)[emphasis added].

Thus, this Court may not consider the merits of the BIA's final Removal Order in this

case.  Nonetheless, under the holding of Zadvydas v. Davis, supra, a Federal District

Court has jurisdiction to entertain a Petition for Habeas relief when an alien, who is

subject to a final Order of Removal challenges only her continued detention.  See, Bah

v. Cangemi, 489 F. Supp.2d 905, 914 n. 9 (D. Minn. 2007); Moallin v. Cangemi, 427

F. Supp.2d 908, 921 (D. Minn. 2006)(collecting cases).

   In considering whether an alien's continued detention violates the Constitution,

"if removal is not reasonably foreseeable, the court should hold continued detention

- 14 -

unreasonable and no longer authorized by statute." <u>Zadvydas v. Davis</u>, supra at 699-700.  In <u>Zadvydas v. Davis</u>, the Supreme Court recognized that it was presumptively reasonable for the INS to detain an alien for six (6) months following a final Removal Order -- i.e., for the initial 90-day removal period, plus another 90 days.  <u>Id.</u> at 701; see also, <u>Bah v. Cangemi</u>, supra at 917.  "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing."  <u>Id.</u>

B.    <u>Legal Analysis</u>.  As we have noted, Jiang seeks Habeas relief on the ground that she has been detained for more than 90 days beyond the BIA's final Removal Order of February 6, 2006.  The Respondents oppose the Petition by contending that Jiang's 90-day removal period has not yet begun due to the Stay of Removal issued by the Court of Appeals for the Second Circuit on October 13, 2006. Accordingly, the Respondents contend that Jiang cannot assert a claim under the INA, nor under <u>Zadvydas v. Davis</u>.

We concur with the argument of the Respondents, and find that Jiang's removal period has not yet begun, since the Second Circuit's Stay of Removal remains in place.  We reject any claim to the contrary, under INA §241, Title 8 U.S.C. §1231, or

- 15 -

Zadvydas v. Davis.   Moreover, we find that Jiang's Due Process rights, as a pre-removal-period detainee, under INA §236(a), Title 8 U.S.C. §1226(a), have not been violated.   Therefore, we recommend that Jiang's Petition for Habeas relief be denied.

      1.   Jiang's Post-Removal-Period Detention.   As noted, the 90-day removal period begins to run on the latest of three possible dates:  1) the date of a final Removal Order; 2) if a Court orders a Stay of Removal in order to permit judicial review of a Removal Order, the date of that Court's final Order; or 3) if the alien is detained on non-immigration grounds, the date the alien is released from such detention.  See, INA §241(a)(1)(B), Title 8 U.S.C. §1231(a)(1)(B).  Here, the Removal Order became effective, and final, when the BIA dismissed Jiang's appeal on February 6, 2006.[10]

---

[10]We need not consider whether the Removal Order was not administratively final until May 22, 2006, when the BIA denied Jiang's Motion to Reconsider, because the Respondents do not contest Jiang's assertion that the Removal Order was administratively final as of February 6, 2006. See, Response to Petition, supra at 4. Moreover, it is unlikely that the BIA's decision to deny Jiang's Motion to Reconsider would be considered the "administratively final" decision that denotes the start of the removal period, for purposes of INA §236(a)(1)(B)(i), Title 8 U.S.C. §1231(a)(1)(B)(i), since Federal Regulations state that "the filing of * * * a motion to reconsider shall not stay the execution of any decision made in the case," and the "[e]xecution of such decision shall proceed unless a stay of execution is specifically granted by the [BIA]." 8 C.F.R. §1003.2(f); see also, White v. INS, 6 F.3d 1312, 1317 (8th Cir. 1993)("Nowhere in the INA or its regulations is there any indication that

If Jiang had sought no further review of her case, then the 90-day period would have begun on that date.  However, once the Second Circuit issued its Stay of Removal,[11] the start of the 90-day removal period was deferred until June 14, 2007,

_____

a motion to reopen or reconsider, regardless of when it is filed or decided, has a bearing on the finality of a deportation order.")(citing to 1993 edition of the Code of Federal Regulations), cert. denied, 511 U.S. 1141 (1994).  Since the BIA did not stay the execution of its Order of February 6, 2006, the removal period would have begun on that date, but for the judicial stay issued by the Court of Appeals for the Second Circuit on October 13, 2006.

[11]Jiang claims that the Second Circuit did not issue a Stay of Removal in her case.  See, Petitioner's Reply, supra at 2.  Instead, Jiang contends that the Second Circuit has a "forbearance policy," under which the INS simply agrees to abstain from removing aliens who have filed Petitions for Review, and corresponding Motions for a Stay, with the Second Circuit -- thus, by implication, a Stay Order need not be issued to prevent removal.  Id.  Based on that assertion, Jiang claims that her removal period **did** begin to run with the BIA's final Removal Order because, according to her, it was not deferred by a judicial stay.  We acknowledge that a forbearance policy does exist in the Second Circuit.  See, Abimbola v. Ridge, 181 Fed.Appx. 97, 99 (2nd Cir., May 18, 2006); Shehnaz v. Ashcroft, 2004 WL 2378371, at *2 (S.D.N.Y., October 25, 2004); Oller Sanchez v. Decker, 2006 WL 3325671, at *3 n. 6 (M.D. Pa., October 24, 2006)(recognizing Second Circuit's forbearance policy).

However, the forbearance policy only applies to preclude the alien's removal while an alien's Motion for a Stay of Removal is **pending** before the Second Circuit. See, Shehnaz v. Ashcroft, supra at *2 (where Second Circuit had not yet ruled on alien's requests to stay removal, and review BIA's Order, a Stay of Removal was in effect pursuant to forbearance policy); but compare, Oller Sanchez v. Decker, supra at *3 (finding that "an informal understanding between a court and government counsel [to stay alien's removal pending appeal] cannot substitute for an order of court"). Thus, once the Second Circuit grants the alien's Motion, and orders a Stay of

- 17 -

that is, the date of the Mandate issued by the Second Circuit, which dismissed Jiang's

appeal.[12]   See,  <u>INA §241(a)(1)(C), Title 8 U.S.C. §1231(a)(1)(C)</u> ("The removal

_____

Removal, as here, it is the judicial stay that prevents the alien's removal, and not the forbearance policy.  Here, the Record shows that the Second Circuit granted Jiang's Motion for a Stay on October 13, 2006, pending its consideration of her second Petition for Review.  Accordingly, we find that the start of Jiang's removal period has been deferred by a judicial Stay, pursuant to INA §241(a)(1)(B)(2), Title 8 U.S.C. §1231(a)(1)(B)(2).  Moreover, as discussed in the text of this Opinion, we conclude that the forbearance policy was equivalent to a judicial stay in this case.

[12]We note that the Second Circuit issued its written Order, dismissing Jiang's appeal, on January 24, 2007, that it denied her Motion to Reconsider on April 30, 2007, and that it issued a mandate on June 14, 2007.  See, <u>Jiang v. Gonzales</u>, Second Circuit Docket No. 06-1001-ag, available online at http://pacer.psc.uscourts.gov. Pursuant to the Federal Rules of Appellate Procedure, the Court of Appeals must issue its mandate no later than seven (7) calendar days after either the time to file a Petition for Rehearing expires, or the entry of an Order denying a timely Petition for Panel Rehearing.  See, <u>Rule 41(b)</u>, <u>Federal Rules of Appellate Procedure</u>.  A mandate is effective when issued.  See, <u>Rule 41(c)</u>, <u>Federal Rules of Appellate Procedure</u>.  "A Court of Appeals' judgment or order is not final until issuance of the mandate; at that time the parties' obligation becomes fixed." <u>United States v. Swan</u>, 327 F. Supp.2d 1068, 1071 (D. Neb. 2004)(quoting <u>Rule 41(c)</u>, <u>Federal Rules of Appellate Procedure</u>, Advisory Committee's Note, 1998 Amendment).  Accordingly, the Order of the Court of Appeals, dismissing Jiang's appeal, did not become final until its mandate was issued on June 14, 2007.  However, that mandate was subsequently recalled by the Second Circuit, on July 13, 2007, upon Jiang's Motion.  See, <u>Jiang v. Gonzales</u>, supra. Thus, the Second Circuit has not yet issued its final decision in Jiang's appeal for purposes of commencing the removal period under INA §241(a)(1)(B)(2), Title 8 U.S.C. §1231(a)(1)(B)(2).  Its judicial stay remains in place, notwithstanding Jiang's contentions.  Because the Supreme Court recently denied Jiang's Petition for a Writ of Certiorari, and her Petition for Rehearing, the Second Circuit's mandate is imminent.  Once issued, the mandate will lift the judicial stay and mark the start of Jiang's removal period.

- 18 -

period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien * * * acts to prevent the alien's removal subject to an order of removal"); see also, <u>Bini v. Aljets</u>, 36 Fed.Appx. 868, 869 (8th Cir., August 11, 2002)(applying Title 8 U.S.C. §1231(a)(1)(C) to find that the 90-day removal period is suspended when an alien, who is subject to a final Removal Order, receives a Stay of Removal); <u>Bah v. Cangemi</u>, supra at 928 ("Congress specified that a stay order defers the **beginning** of the removal period") [emphasis in original]; <u>Codina v. Chertoff</u>, 2007 WL 1582670 at *7 (D. Minn., May 30, 2007); <u>Moallin v. Cangemi</u>, supra at 923, 925.

Since the Second Circuit has not issued its Mandate in this case, the judicial Stay remains in place, and Jiang's removal period has not yet begun. Therefore, we find that Jiang has not asserted a statutory claim for Habeas relief under INA §241, Title 8 U.S.C. §1231, because her 90-day removal period has not expired. We acknowledge that Jiang's removal period will commence in the near future, once the Second Circuit issues its Mandate, and lifts its judicial stay. However, even when that occurs, the INS will have a 90-day period in which to remove Jiang.

Moreover, because Jiang's 90-day removal period has not expired, then <u>ipso facto</u>, the presumptively reasonable six (6) month period identified in <u>Zadvydas v.</u>

<u>Davis</u> has not expired.  As a consequence, we reject any claim under <u>Zadvydas v.</u> <u>Davis</u>.  Even if Jiang's six (6) month period  had expired, we do not believe that Jiang has provided us with good reason to believe that there is no significant likelihood of her removal, once the judicial Stay is lifted.  See, <u>Zadvydas v. Davis</u>, supra at 701. Jiang asserts only that the INS has twice contacted the Consulate General of China and received no response, and that, therefore, there is no reasonable likelihood that the INS will be able to obtain travel documents.  See, <u>Petitioner's Reply</u>, supra at 3-4. We find Jiang's assertion unpersuasive to show that her removal is not likely, given that the INS was actively pursuing her removal prior to the issuance of the judicial stay.  Indeed, the Record shows that a Chinese government official from the Consulate did conduct a telephone interview of Jiang in order to begin the process of obtaining her travel documents.  See, <u>A.R.</u>, supra at 53.  Jiang has not met her burden under <u>Zadvydas v.</u> <u>Davis</u>, and therefore, we recommend that her Petition be denied.

        2.  <u>Jiang's Pre-Removal-Period Detention</u>.  Because we find that Jiang's removal period has not begun, we conclude that Jiang is detained, not under INA §241, Title 8 U.S.C. §1231, which governs an alien's detention after a Removal Order, but pursuant to INA §236, Title 8 U.S.C. §1226, which governs an alien's detention during removal proceedings.  See, <u>Wang v. Ashcroft</u>, 320 F.3d 130, 147 (2d Cir.

2003)("[W]here a court issues a stay pending its review of an administrative removal order, the alien continues to be detained under [§1226] until the court renders its decision."); see also, <u>Bah v. Cangemi</u>, supra at 917, 920 (collecting cases that adopt this approach, and concluding same); but compare, <u>Codina v. Chertoff</u>, supra at *8 (finding that alien had been detained under §1231 since the date the BIA dismissed appeal, notwithstanding judicial Stay from Second Circuit, which deferred start of removal period).

As a result, we turn to consider whether Jiang has raised a Substantive Due Process claim relating to her detention, under Section 236, which reads as follows:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) of this section and pending such decision, the Attorney General--
>
> > (1)    may continue to detain the arrested alien; and
> >
> > (2)    may release the alien on--
> >
> > > (A)    bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or

        (B)     conditional parole; but

   (3)     may not provide the alien with work authorization (including an "employment authorized" endorsement or other appropriate work permit), unless the alien is lawfully admitted for permanent residence or otherwise would (without regard to removal proceedings) be provided such authorization.

INA §236(a), Title 8 U.S.C. §1226(a);[13] see also, Bah v. Cangemi, supra at 915 ("Section 1226(a) allows the government, at its discretion, to detain all other [non-criminal] aliens pending decisions on their removal.").

The statute limits judicial review of the Attorney General's discretionary detention decisions, as follows:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the

---

[13]Jiang contends that the INS is unlawfully detaining her under INA §236(c), Title 8 U.S.C. §1226(c), which requires detention of criminal aliens pending a decision on removal. See, Petitioner's Reply, supra at 9. Jiang argues that she is not a criminal alien, in part, because she contends that her conviction is not final, and in part, because she contends that her crime was a misdemeanor, and not a felony. We agree only that Jiang's Removal Order does not identify the basis for her removal as her criminal conviction. Instead, as noted, Jiang's removal was based on her violation of her visa conditions. Thus, we conclude that Jiang is not being detained as a criminal alien, as mandated by INA §236(c), Title 8 U.S.C. §1226(c), but pursuant to the Attorney General's discretionary powers under INA §236(a), Title 8 U.S.C. §1226(a). Accordingly, Jiang's contention in this respect is without merit.

> Attorney General under this section regarding the detention
> or release of any alien or the grant, revocation, or denial of
> bond or parole.

INA §236(e), Title 8 U.S.C. §1226(e); see also, Demore v. Kim, 538 U.S. 510, 517 (2003)(finding that Section 1226(e) precludes review of Attorney General's discretionary decisions to detain alien in a particular case without bail, but permits constitutional challenges to statutory framework on Habeas review).

Therefore, we do not review the INS' discretionary determination that Jiang should be detained, during her removal proceedings, as a flight risk.  Instead, we consider whether her pre-removal-period of detention has exceeded constitutional limits.

In Demore v. Kim, the Supreme Court considered a constitutional challenge to INA §236(c), Title 8 U.S.C. §1226(c), which "mandates detention **during** removal proceedings for a limited class of deportable aliens -- including those convicted of an aggravated felony." Id. at 517-18 [emphasis added].  The Habeas petitioner, who was there detained as a criminal alien, asserted that the statute violated the Fifth Amendment Due Process clause by permitting his detention during removal proceedings without an individualized determination of his flight risk or dangerousness -- that is, because the statute mandated detention for all criminal aliens within the statutorily-defined class. Id. at 514, 523, 528.  The Court rejected that contention, finding that Congress was "justifiably concerned that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers," and

- 23 -

that, therefore, those criminal aliens may "be detained for the brief period necessary for their removal proceedings."  Id. at 513.

In reaching its conclusion, the Court distinguished the Due Process concerns identified in Zadvydas v. Davis in two respects.  First, the Court found that detention of deportable criminal aliens during removal proceedings, pursuant to INA §236(c), Title 8 U.S.C. §1226(c), "necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings."  Demore v. Kim, supra at 528.   By contrast, the post-removal-period detention at issue in Zadvydas v. Davis, pursuant to Section 1231, "no longer [bore] a reasonable relation to the purpose for which the individual was committed," once removal is no longer reasonably foreseeable.  Demore v. Kim, supra at 527.

Second, the Demore Court found that, "[w]hile the period of detention at issue in Zadvydas was 'indefinite' and 'potentially permanent,' * * * the detention here is of a much shorter duration."  Demore v. Kim, supra at 528 (internal citation omitted). The Court found that "the detention at stake under §1226(c) lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the

minority of cases in which the alien chooses to appeal."[14]   Id. at 530 (footnote omitted).  Moreover, the Court noted that detention under INA §236(c), Title 8 U.S.C. §1226(c), has "a definite termination point," id. at 529, i.e., the conclusion of removal proceedings.  Thus, the Court rejected the Due Process challenge to the pre-removal-period detention of criminal aliens.

Notwithstanding the Court's conclusion in Demore v. Kim, at least one Court has since read a temporal limitation into pre-removal-period detention, under INA §236(c), Title 8 U.S.C. §1226(c).  See, Ly v. Hansen, 351 F.3d 263, 270 (6th Cir. 2003)("[T]he INS may detain prima facie removable aliens for a time **reasonably required** to complete removal proceedings in a timely manner.")[emphasis added]; see also, Bah v. Cangemi, supra at 919 (collecting cases that found constitutional limits on §1226 detention); cf., Mullings v. Chertoff, 2007 WL 1723469 at *4 n. 3 (D.N.J., June 12, 2007)("[T]he discretionary power of the Attorney General [pursuant to §1226(a)] has only one temporal limitation, namely, the conclusion of removal proceedings.").

---

[14]In Demore v. Kim, 538 U.S. 510, 530 (2003), by comparison, the alien had been detained for six (6) months during his removal proceedings, but the Court noted that the alien "himself had requested a continuance of his removal hearing."

In <u>Bah v. Cangemi</u>, a Court in this District discussed the possibility of a case in which -- as here -- an alien is detained, following a Final Removal Order from the BIA, for more than six (6) months before a Federal Court of Appeals orders a Stay of Removal. <u>Id.</u> at 916. The Court outlined the scenario, as follows:

> Suppose that an alien's order of removal becomes administratively final on Day 1 because the BIA dismisses the alien's appeal. The alien then petitions the court of appeals for review of the dismissal and asks for a stay. The court of appeals does not rule on the stay order. On Day 200, the alien petitions for a writ of habeas corpus in the district court, relying on <u>Zadvydas</u>. If the alien can establish that his or her removal is not reasonably foreseeable, the alien would, as of Day 200, have a meritorious habeas claim in the district court.

> But suppose that, on Day 201, the court of appeals grants the stay. Under §1231(a)(1)(B), the stay does not suspend the removal period; instead, it **defers the start** of the removal period. Seen from Day 200, the removal period began on Day 1. But seen from Day 202, the removal period never began. And if the removal period never began, neither did the <u>Zadvydas</u> clock, and §1226 (the provision that applies before and during immigration proceedings) rather than §1231 (the provision that applies after immigration proceedings) governs the alien's detention.

<u>Id.</u> at 920 [emphasis in original].

The District Court outlined two approaches to resolving the characterization of time that was once removal-period, and post-removal-period detention, but was later

"transformed" into pre-removal-period detention by a subsequent Stay Order.  Id. at 917.

Under the "retrospective-recharacterization" approach, "a stay order causes **all** 'time served' to be recharacterized as pre-removal-period detention, and **none** of it counts as removal-period or post-removal-period time for purposes of Zadvydas." Id. at 917 [emphasis in original].  The Bah Court acknowledged that the retrospective-recharacterization approach was in accord with the text of INA §241, Title 8 U.S.C. §1231.  However, the Court rejected that approach in favor of the"unencumbered-time" approach, which it described as follows:

> A second approach -- call it the "unencumbered-time" approach -- focuses on counting the amount of removal-period and post-removal-period time during which immigration officials could lawfully have removed the alien. All of this "unencumbered" time -- for example, time between an administratively final removal order and a stay order, and time after lifting of a stay but before actual removal -- counts toward the six-month Zadvydas period. But all of the time during which a stay is in effect is considered "encumbered" and does not count for Zadvydas purposes.

Id. at 918.

The Bah Court acknowledged that the unencumbered-time approach "is hard to square with the text of the statute."  Id.  However, it concluded that the retrospective-

- 27 -

recharacterization approach raised constitutional concerns, based on the Supreme Court's decision in <u>Demore v. Kim</u> which, it found, "emphasized the brief and limited time period of pre-removal-period detention under §1226(c)."[15]   <u>Bah v. Cangemi</u>, supra at 919.  Because the Habeas petitioner in <u>Bah</u> had been detained in excess of six (6) months, before our Court of Appeals granted his Petition for Review, remanded the case to the BIA, and thereby changed the start of his removal period, the Court concluded that he had asserted a valid claim under <u>Zadvydas</u>.  Accordingly, the Court granted Habeas relief.[16]  <u>Id.</u> at 921, 923.

---

[15]Other Courts have emphasized the <u>Demore</u> Court's consideration of a "definite termination point," rather than the length of such detention, in cases challenging detention under INA §236(a), Title 8 U.S.C. §1226(a), as here.  See, e.g., <u>Beqir v. Clark</u>, 220 Fed.Appx. 469, 471 (9th Cir., January 25, 2007); <u>Ali v. Achim</u>, 342 F. Supp.2d 769, 774 (N.D. Ill. 2004); see also, <u>Hussain v. Gonzales</u>, 492 F. Supp.2d 1024, 1034 (E.D. Wis. 2007)(challenge to detention under §1226(c))("While the time needed to complete [removal] proceedings may vary, it is not indefinite.").

[16]Within a month of the District Court's decision in <u>Bah v. Cangemi</u>, another Court in this District considered a case with facts similar to those now before us.  See, <u>Codina v. Chertoff</u>, 2007 WL 1582670 (D. Minn., May 30, 2007).   In <u>Codina v. Chertoff</u>, an alien was detained for eight (8) months, following a Removal Order by the BIA, before the Second Circuit granted her Motion for a Stay of Removal.  <u>Id.</u> at *7.  The alien brought a Habeas Petition, relying on <u>Zadvydas v. Davis</u>.  The <u>Codina</u> Court concluded that the alien was detained under INA §241, Title 8 U.S.C. §1231, as a post-Removal Order detainee, despite the judicial Stay.  <u>Id.</u> at *8.  Accordingly, the Court held that <u>Zadvydas</u> was inapplicable, and denied the Habeas Petition.  <u>Id.</u> The facts of <u>Codina v. Chertoff</u> square with the facts at issue here.  Nevertheless, we find it prudent to address the alternative reasoning of <u>Bah v. Cangemi</u>, as outlined in

Although we find the Bah Court's analysis persuasive, we do not find that it compels Habeas relief in this case.[17]   Jiang filed her Habeas Petition in this Court on November 13, 2006, after the Second Circuit issued its Stay Order on October 13, 2006.  The BIA's Removal Order was final on February 6, 2006, which meant that

the text of this Opinion.  We recommend in the alternative, however, that Jiang's Petition be denied for the reasons that were outlined by the Court in Codina v. Chertoff.

[17]Indeed, the District Court's discussion was dicta, with regard to the effect of a judicial stay on an alien's Zadvydas claim, as that was not the factual scenario before the Court.  In Bah v. Cangemi, the Habeas petitioner was an alien who had been detained for more than 16 months following a final Removal Order from the BIA, but without a judicial Stay of Removal.  During the alien's detention, his Petition for Review was pending before our Court of Appeals, but his Motion for a Stay had been denied.  Subsequently, the Court of Appeals granted his Petition for Review, and remanded his case to the BIA.  In the interim, the alien had filed a Habeas Petition with the District Court, which found that the case involved "a removal order that stopped being final."  Bah v. Cangemi, supra at 917.

We also note that the Court, in Bah v. Cangemi, addressed an alien's pre-removal-period detention pursuant to INA §236(c), Title 8 U.S.C. §1226(c), which mandates detention of deportable criminal aliens, without providing an individualized detention determination.  Jiang, by comparison, has been detained during her removal proceedings pursuant to the Attorney General's discretionary power, under INA §236(a), Title 8 U.S.C. §1226(a).  The corresponding Immigration Regulations require an individual custody determination to be made by the INS Director when a detainer is issued relating to removal proceedings.  See, 8 C.F.R. §287.7(a)(detainers issued under INA §236, Title 8 U.S.C. §1226(c)(granting the  INS access to records "to accurately determine the propriety of issuing a detainer, serving a notice to appear, or taking custody of an alien")).  Accordingly, we find the facts of Bah v. Cangemi distinguishable from those currently before the Court.

more than six (6) months had passed before the Second Circuit's Stay Order.  We cannot, however, discount the effect of the Second Circuit's forbearance policy on the INS's failure to remove Jiang to China, between February 6, and October 13, 2006.

Even though at least one District Court has held that the Second Circuit's forbearance policy is not the equivalent of a judicial stay, see, Oyedeji v. Ashcroft, 332 F. Supp.2d 747, 751 (M.D. Pa. 2004)("[T]he agreement between the Second Circuit and the United States Attorney's Office did not suspend the running of the removal period."); Oller Sanchez v. Decker, 2006 WL 3325671, at *3 (M.D. Pa., October 24, 2006)(citing same), we do not agree.  We find that the Second Circuit's forbearance policy did effect a stay of Jiang's removal period.  See, Shehnaz v. Ashcroft, 2004 WL 2378371 at *2 (S.D.N.Y., October 25, 2004); see also, Moallin v. Cangemi, supra at 923 (concluding that an injunction, which precluded the removal of aliens to Somalia, was not equivalent to a stay because "[t]he text of the statute does not support delaying the commencement of the 'removal period' pending the indeterminable execution of a non-judicial event.").  We find that Jiang's removal was effectively stayed on March 2, 2006, when she filed her Motion for a Stay with the

Second Circuit.[18]   Thus, under the unencumbered-time approach, which was adopted

by Bah v. Cangemi, the INS had less than one (1) month to effect Jiang's removal.

We conclude that Jiang's detention, under INA §236(a), Title 8 U.S.C. §1226(a), has

not run afoul of Zadvydas.[19]   As a consequence, we recommend that her Petition be

denied.

       3.   Jiang's Custody Review.   We now proceed to Jiang's claim that the

INS violated her Due Process rights when it conducted a custody review, and ordered

her continued detention.   See, Petitioner's Reply, supra at 5; A.R., supra at 47-55.   An

alien who is detained beyond the expiration of the removal period is entitled to custody

reviews under Federal Immigration Regulations.   See generally, 8 C.F.R. §241.4.   The

Record shows that, on May 8, 2006, the INS conducted a custody review, and made

a decision to continue Jiang's detention.   See, A.R., supra at 56.   The INS Director

_____

[18]We need not resolve what effect the forbearance policy would have had on Jiang's removal period if the Second Circuit had denied her Motion for a Stay of Removal, as that circumstance is not before us, and therefore, is wholly conjectural.

[19]Moreover, by the time Jiang filed her Habeas Petition with this Court, the Second Circuit had granted her Motion and issued a Stay Order.   As of the date of Jiang's filing then, unlike the petitioner in Bah v. Cangemi, Jiang's claim under Zadvydas was arguably moot.

- 31 -

determined that Jiang was a flight risk, based on her criminal conviction and her marriage fraud, and ordered her continued detention.  See, <u>A.R.</u>, supra at 47, 56, 57.

The INS Director noted that, despite notice of the custody review, Jiang had failed to submit any documentation that would establish residence or employment.[20] <u>Id.</u> at 48; see also, <u>8 C.F.R. §241.4(d)(1)</u>(The INS "may release an alien if the alien demonstrates to the satisfaction of the [INS] that his or her release will not pose a danger to the community or to the safety of other persons or to property or a significant risk of flight pending such alien's removal from the United States.").  The custody determination stated that Jiang would be eligible for another custody review within one (1) year.  <u>Id.</u>

Because the BIA issued its Final Removal Order on February 6, 2006, the timing of Jiang's custody review on May 8, 2006, was in line with 8 C.F.R. §241.4(k)(1)(i), which requires a custody review prior to the expiration of the 90-day removal period. However, the Record shows that the INS believed a Stay of Removal was in effect at

---

[20]Jiang contends that she submitted evidence of her residence and financial means to the INS, on April 22, 2006, prior to her custody review.  See, <u>Petitioner's Reply</u>, supra at 5-6; see also, <u>Petitioner's Exhibits</u>, supra, Exhibit B, at Exhibit 17. Jiang further contends that she asked the INS to reconsider its custody determination in a letter dated May 11, 2006, based on her submissions.  <u>Id.</u> at 1, 8; <u>Petitioner's Exhibits</u>, supra, Exhibit B, at Exhibit 19.

the time of the custody review, presumably due to the forbearance policy mentioned above, which meant that the removal period had not yet begun.  See, <u>A.R.</u>, supra at 47 (stating that the Stay of Removal from the Second Circuit "precludes [the INS] from enforcing [Jiang's] departure from the United States at this time.").  Nevertheless, the INS conducted Jiang's custody review "to consider the subject's release pursuant to [8 C.F.R. §]241.4 of the Immigration and Nationality Act."  <u>Id.</u> at 56.

Under Section 241.4 of the Regulations, an alien who is detained under INA §241, Title 8 U.S.C. §1231, is entitled to another custody review, this time by an INS panel, at the expiration of the three (3) month period following the 90-day removal period.  See, <u>8 C.F.R. §§241.4(k)(1)(ii) and 241(k)(2)(ii)</u>.  In her Reply Memorandum, Jiang asserts that she submitted documentation to the INS on July 12, 2006, in anticipation of a six (6) month custody review in August of 2006.  See, <u>Petitioner's Reply</u>, supra at 1, 12.  There is no evidence, in this Record, that Jiang submitted any information to the INS in July of 2006, or that the INS conducted a six (6) month custody review.  However, because we conclude that Jiang's removal period has not begun, and could not have expired, the custody review requirements of 8 C.F.R. §241.4 are inapplicable.  Accordingly, we cannot conclude that Jiang was entitled to

- 33 -

a custody review in August of 2006.  We find that claim to be without merit, and therefore recommend that her Petition be denied.

Moreover, even though Jiang claims that her Due Process rights have been violated, she does not challenge the statutory or regulatory framework that governs the INS's custody determinations, which would be the only proper claim in a Federal Habeas Petition.  See, INA §236(e), Title 8 U.S.C. §1226(e); Demore v. Kim, supra at 517.  Instead, Jiang challenges the substantive decision of the INS to continue her detention.  She asserts that the INS should not have considered her criminal conviction, or her marriage fraud, as found by the IJ, in its custody review.  See, Petitioner's Reply, supra at 7-8, citing A.R., supra at 56.

As we have previously noted, this Court does not have jurisdiction to consider any challenge to the IJ's findings, or as to the validity of a Removal Order.  See, INA §242(a)(5), Title 8 U.S.C. §1252(a)(5).  In addition, because Jiang continues to be detained pursuant to INA §236(a), Title 8 U.S.C. §1226(a), her detention is premised on the INS Director's decision to issue a detainer at the commencement of her removal proceedings.  See generally, 8 C.F.R. §287.7.  Federal Regulations provide Jiang with appellate review of her custody determination before an Immigration Judge.  See, 8 C.F.R. §236.1(d)(1); see also, Zheng v. Gonzales, 2007 WL 2310036, at *3

(W.D. Wash., August 6, 2007).   Discretionary decisions, which relate to an alien's custody under INA §236(a), Title 8 U.S.C. §1226(a), are not subject to judicial review. See, INA §236(e), Title 8 U.S.C. §1226(e).   Accordingly, we recommend that Jiang's challenge to the custody determination, insofar as it implicates the validity of the Removal Order, or the discretionary decision of the INS to continue her detention, be denied.

4.  Jiang's Other Claims.  In her Reply Memorandum, Jiang raises several additional claims, which we now briefly address.   First, Jiang asserts, again, that the IJ improperly considered her criminal conviction and her fraudulent marriage in his decision to order her removal.   As noted, Jiang continues to assert that her criminal conviction is not final, see, Petitioner's Reply, supra at 7, and that her sworn statement, which concerns the validity of her marriage, was taken in violation of her right to counsel, and without benefit of an interpreter.  Id. at 8.  Jiang also maintains that the IJ failed to consider her claim of persecution.  Id. at 9-10.  Again, only a Federal Court of Appeals has jurisdiction to consider the validity of Jiang's Removal Order and the IJ's decision.  See, INA §242(a)(5), Title 8 U.S.C. §1252(a)(5).  As a consequence, we cannot, and do not, consider those claims.

Jiang further contends that she does not meet the criteria for continued detention under 8 C.F.R. §241.14.  See, <u>Petitioner's Reply</u>, supra at 9.  As noted, however, we find that Jiang is being detained pursuant to the Attorney General's discretion under INA §236(a), Title 8 U.S.C. §1226(a).  Since Jiang is not being detained under 8 C.F.R. §241.14, we also find that this claim is without merit.

In sum, finding no merit to Jiang's arguments, we recommend that her Petition be denied.

NOW, THEREFORE, It is –

RECOMMENDED:

That the Petition for Writ of Habeas Corpus [Docket No. 1] be denied.


Dated:  December 12, 2007                    s/Raymond L. Erickson
                                             Raymond L. Erickson
                                             CHIEF U.S. MAGISTRATE JUDGE


## NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than**

**December 31, 2007,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than December 31, 2007,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.